Of course, thank you Judge Gould. May it please the court, good morning. My name is Jacqueline Holmes and I'm here on behalf of the appellant BNSF Railway Company. I would like to attempt to reserve three minutes for rebuttal, subject of course to what you just said, Judge Gould. BNSF dismissed the plaintiff in this case because he submitted a dishonest timesheet that he failed to sign as are rules required. He was insubordinate when he refused to leave work after being told by a manager to do so. And when he and his crew failed to work efficiently on February 23rd, 2010, spending more than five hours on the job and accomplishing none of their assigned tasks. Plaintiff alleged that he was dismissed for engaging in three activities protected by the Federal Railroad Safety Act. The jury ruled in BNSF's favor as to two of those activities, finding the plaintiff had not satisfied his burden of proof. As to the third, the sole claim on which plaintiff prevailed, the district court misled the jury and put his thumb on the scale in favor of the plaintiff in two ways. First, he improperly granted summary judgment to the plaintiff on the contributing factor element of his claim, which meant that the plaintiff only had to prove protected activity. And then as to protected activity, he made several interpretive and instructional errors. The court should reverse for both of those reasons. I did receive the court's order from last week, and I'm prepared to address the issue that the court outlined. With permission, however, I'd like to start with and address the contributing factor issues, and then move to protected activity and address the court's question in the first portion of that argument. With respect to the summary judgment issue, the district court granted summary judgment on an element of the plaintiff's affirmative case on which he had the burden of proof. Concluding as a matter of law, that the break test played a role in the discipline. That was error. Factually, there's ample evidence in the summary judgment record that that was not the case. So, let me, I was confused by the district court's ruling. So let me get your help on that. The district court said there was a low bar for a prima facie case. And then never went on to say whether there was a genuine issue of material fact about actual violation. Is the prima facie case standard the appropriate one for determining whether there's a genuine issue of material fact? Or was that an error? Or, because the court never goes on to talk about what happens when you get beyond the prima facie case. Correct, and I think there's a lot of loose language, frankly, in the decisions on this issue. Under the FRSA, there is a two-pronged burden shifting. The plaintiff sets forth what I call an affirmative case. I try not to use the words prima facie case, because I think it easily then gets confused with the McDonnell-Douglas burden shifting. What I think he meant here is that the plaintiff did not put forth his affirmative case. And he granted judgment to the plaintiff on one element of that case. He did use the phrase prima facie, but he did not mean it, I don't think, in the sense of the McDonnell-Douglas burden shifting, which we acknowledge doesn't apply here. So what happens under this statute is the plaintiff proves the four elements of his claim. And if he does so, then the railroad has an affirmative defense to prove by clear and convincing evidence that it would have taken the same action, notwithstanding the protected activity. So there's really only two, the reason I'm asking this is because the statute seems to have, and the regulations seem to have three different prongs. So in the regulations, in order to commence an investigation, there has to be a prima facie case, then there's a defense, and then the secretary has to find a violation. But do you think that the elements in the regulations that, for example, temporal proximity is enough to show a contributing factor, you think that is enough to prove a violation as well as the affirmative case? I don't, and I'm sorry for not being clear about that. I think that it is, so there is a somewhat lower standard in the regulations, you're right. And this is what I mean about the loose language in the decisions. I think once you get to a decision on the merits in a court, whether it be before an administrative law judge or in a court, you shouldn't really be talking about prima facie case anymore. That is a bit of a lower standard that allows OSHA to decide whether or not it's even going to investigate the claim. And OSHA does dismiss some claims, for example, if they're untimely. But if there's a temporal proximity, OSHA usually will commence an investigation, but that doesn't mean they find a violation. So a temporal proximity, so if the only thing he had to show was temporal proximity between not doing the error test and then being terminated, he certainly showed that. And if that's enough, then there wasn't a genuine issue of material fact that it wasn't a contributing factor. If that's not enough, then NSF put on evidence as to why it wasn't, so and taking the facts in the light most favorable to the NSF, there was a genuine issue. But I'm not sure, I'm not sure I'm understanding whether it's temporal proximity is enough. So under the case law that's developed in the courts of appeals uniformly, it's not enough by itself, right? To enter judgment for the plaintiff as a matter of law. There's not a single case that holds that. The closest appellate case- But is it enough for that prong of whatever we're calling it, the prima facie case if it's looking at the regulation? So it might be enough to get OSHA to investigate the claim. But once you're in federal court, that's no longer an issue. The question then is, did the plaintiff prove the claim, right? But what is the judge referring to as the low bar? I think that he was referring to whether the plaintiff proved the claim. And the contributing factor is any factor alone or with other factors, right? So it's not a principal factor or the motivating factor. I think that's the low bar language. So the regulations is the claimant has to prove by a preponderance of the evidence. Did the district court adopt that? So that's the standard he should have been applying. I'm not 100% clear myself what standard he was applying. But that's certainly the standard he should have been applying. And that's the standard that the appellate courts have uniformly applied, right? There are no cases at the appellate level under this statute or even at the district court level under the statute that hold that temporal proximity is enough for plaintiff to obtain judgment as a matter of law. Okay, so the BNSF raised this evidence, including Mr. Jones, Douglas Jones, saying that the air test was irrelevant to his decision. So under normal summary judgment principles, we would ask, could a jury credit that testimony? And if so, find in favor of BNSF. And then we would say there's a genuine issue material fact, and that has to go to trial. But the district court was relying on this temporal proximity and the very low bar for showing a prima facie case, because I'm using that term because that's what the district court used. And so, and under that test, the district court may have been correct that there wasn't a genuine issue material fact if all you have to show is temporal proximity. So that point seems really crucial to me as to what is the correct test. What elements did Mr. Rooker have to show so that he was entitled to judgment as a matter of law on the contributing factors? In other words, that the air test was a contributing factor as a matter of law. What did he have to show? Correct, so we would argue under the appellate standards that have developed in the seventh and eighth circuit, there is not enough to show that there was retaliation, right? This is an anti-discrimination statute. It is not enough to show simply that two things happened even if they happened close in time to each other. That's the Coziart case in the seventh circuit, right? That is the Davis case, the Burton case, the Araujo case. None of those cases enter judgment for the plaintiff. And under the district court's theory, they would have if his theory were correct. There aren't any cases that enter judgment for the plaintiff. There are cases that say the plaintiff gets a trial, and of course, that's all we're asking for here on this element. I think you're exactly right, that if you take the facts in the light most favorable to the railroad here, there's no way to grant summary judgment unless you say temporal proximity alone is enough, and no case has said that. And this is and would be the first. I mean, again, the Coziart summary judgment opinion, which the Seventh Circuit reversed, went in that direction. And that's why the Seventh Circuit reversed. They said that's not enough. You have to show approximate cause. You can't just show some loose factual connection. That is not sufficient. So I think that's really the key point. And again, and there's no argument, no viable argument that this was a harmless error either. The fact that the jury rejected whether BNSF had proved by clear and convincing evidence its own defense, doesn't say anything about whether they would have found that the plaintiff had met his own burden. And indeed, when they were asked to as to other protected activities, they found that he had not. And I think- There's some additional evidence in the record, though, about comments made. We're going to teach him a lesson, and wouldn't that factor in as well beyond just temporal proximity? So that email to which you're referring was by Robert Johnson. It's a three-page email. It doesn't mention the break test. So you certainly can't use that as a matter of law to say that the break test contributed. Certainly, it's evidence the jury can consider. There's no question about that. And a jury might conclude, and there may be evidence in the record. Again, I'm not seeking judgment as a matter of law on this question. There may be evidence in the record that a jury could have considered and determined that there was a contributing factor. That's possible. But that's not what happened. The judge, inexplicably to me, took it out of the jury's hands, even though we were having a trial anyway. And there was no basis to do that in the law whatsoever. There's no case that has been cited to you or otherwise that justifies that. Ordinary summary judgment standards do apply here, and temporal proximity alone is not enough. And the Kuda case, the Kosiara case, all of those cases, even the Araujo case from the Third Circuit, which is the most plaintiff-friendly articulation of the standards, there was temporal proximity there, no question. And there was even more than that. The employer in that case had all the evidence they needed to charge the person before he reported his injury, which was a protected activity, and didn't, and then they charged him afterwards. Even there, the Third Circuit just said, there's not overwhelming evidence of retaliation here, and he gets a trial. They did not say he gets judgment as a matter of law. That's what the district court did here, and it was a mistake. With regard to protected activity, if I may, I would first like to address the issue that the court raised in an order last week. That is whether 20109A2 requires proof of an actual violation of federal law, or whether it's sufficient for the plaintiff to show that he reasonably believed that he had refused to violate federal law. I think the better interpretation, candidly, is that an actual violation is required. There are several reasons for that, beginning, of course, with the statutory text. As the court's order pointed out, 20109A1 refers to a plaintiff's reasonable belief about a violation, and 20109A2 does not. It simply requires the plaintiff to refuse to violate or assist in the violation of federal law. Under normal principles of statutory interpretation, that omission is meaningful and suggests an actual violation and that reasonableness isn't enough. I think further, though, under the text of this statute, this statute contains a refusal to work provision in 20109B1B and 20109B1C. Those two provisions permit an employee to refuse to work when confronted by a hazardous safety condition or to refuse to authorize the use of hazardous safety equipment, but they require the employee to jump through some hoops. They can't simply refuse to work. They have to show that there was no reasonable alternative. They have to show that there was an imminent danger. They have to show that they advised the carrier of the situation and gave the opportunity to correct. If you interpret subsection A2, as the district court did here, to permit simply reasonable belief, I think you undercut those refusal to work provisions because you're going to, this is a very heavily regulated industry. There are hundreds, if not thousands, of regulations that potentially apply in any given situation. And if you read subsection A2 to permit that sort of an argument, then I think you really undercut the additional requirements that Congress laid out before permitting a refusal to work. It of course makes sense under A2 if there's an actual violation to allow the employee to refuse. Because in that situation, you've got a regulatory agency that's determined that it's problematic. But this is quite different than that. Has any court other than the district court here inserted reasonable belief into the A2? It's a question of first impression under the FERSA, as far as I can tell. The only A2 case that I know of is the Morgan versus Norfolk Southern case that's cited in the briefs. And there, there seemed to be an agreement, and so it wasn't discussed, that it would have been an actual violation, as far as I can tell, Your Honor. I will say, though, that there is an analog. The Surface Transportation Assistance Act is the employee protection provision that covers the trucking industry. It's at 49 USC 31105. Similar to the FERSA, it permits a refusal, in that case, it's to operate a vehicle, a truck, because the operation violates a federal law or regulation, that's 31105 A1B i. Or because the employee has a reasonable fear that it would be unsafe to do so, that's 31105 A1B, little two I's. In light of that second prong, courts have held that the first prong requires a showing of an actual violation. And in that regard, I would point you to the 11th Circuit's opinion in Coke Foods versus Secretary of Labor. It's reported at 712F3476. It's a 2013 opinion in which the 11th Circuit held over the objection of the Department of Labor that that first prong requires an actual violation and the reasonable belief is not enough. So I think that's the closest I have in terms of the case law. This question is a bit tangential, but the district court made a determination that in this case it was not required, the test was not required by law. But it said, as a matter of law, relying on this very old Thompson 8th Circuit case, which I didn't find persuasive. So in your view, is this, whether it's a transfer action or a switch action, is that a mixed question of law and fact? Is it a legal question or is it a factual question? So I think here the district court viewed it as a legal question, and I don't have any basis to disagree with that. I think there certainly were a lot of facts put forth, and I think part of the problem we have, in addition with what the district court did here, just coming to the end of my time, is that he informed the jury, I'm going to make this decision because it's complicated. And then he found it was not required, and then he refused to instruct the jury that it was not required. And under his view of A2, reasonableness was enough. So even if he had instructed the jury it was not required, the plaintiff still had a path to prevail. The problem, I think, is that that instruction gave the plaintiff a second legally impermissible path to prevail, right? He now has, he can argue, he nonetheless had a reasonable belief. But he can also argue the test was not required, and that's exactly what he did. And that is prejudicial. BNSF was entitled to the correct instruction on that. So I think it ought to go back for that reason as well. Absent any additional questions, I will reserve the remainder of my time. Thank you. You may want to wait until the siren stops. I think we're clear. Good morning, may it please the court. My name is Christopher Bowman, here today on behalf of appellee and cross-appellant Curtis Rueckert. I want to begin this morning by addressing, this morning, about 10 minutes ago, it's the first time in this case, at the district court level, at the briefing at this court, or at the briefing for this court, that BNSF has challenged whether or not reasonable belief of a violation is a requirement. This was not the district court's interpretation of A2. This was plaintiff counsel's interpretation of A2, trial defense counsel's interpretation of A2, and according to the appellate brief, appellate counsel's position of A2. Continuously throughout their brief, they acknowledge that, you know, they challenge the may or may not have been, or I'm sorry. If everyone accepted that it was a reasonable belief in A2, I think we understand that. But given that this case is before us, and we have a duty to interpret the law, there is at least a question about what is the correct interpretation of A2, and is there a reason to insert reasonable belief as the district court did? And I think there is, your honor, and the basis for that stems from 20109A proper, which hinges everything on good faith. The requirement is that the refusal has to be done in good faith, and courts have interpreted that good faith requirement to include a subjective and objective reasonable basis. You know, I understand that the language reasonably believes is not found in A2, and it is found in A1, but I don't think that is necessarily determinative of the issue for a number of reasons. First, I would direct the court's attention to 20109A7, which says to accurately report hours. It also doesn't say to refuse to violate an actual, or to perform an act which actually violates federal law, rule, or regulation. So to the extent that the court can look at this and say, well, A1 contains reasonably believes language, and A2 does not, I think the court also needs to look at 20109A7 and recognize that Congress did not include an accuracy requirement in A2. Secondly, to- How does that, can you help me understand how that affects the analysis of A2? So seven says to accurately report hours on duty. That, I would put that if a railroad employee submits, reports hours of duty, and is incorrect in doing so, the railroad and the court may have an argument to say, well, that's not required, or I'm sorry, that's not protected under the FRSA because 20109A7 protects actual or accurate reporting of hours of duty. But there's no accuracy language in 20109A2, so you revert back to the good faith modifier that governs 20109A in its entirety. Additionally, if you look at 20109A4, which deals with notifying the railroad of a work-related injury or illness, courts around the country have found that the critical inquiry in that is whether at the time the employee notified the railroad of the injury, he or she reasonably believed that the injury was work-related. If it turns out that the employee medically is wrong, and that the medical, or that the injury or illness, it turns out was not work-related, they are still protected under 20109A4, even though 20109A4 does not include a reasonably believed language. And that's from the Ray v. Union Pacific case out of the Southern District of Iowa, the Davis v. Union Pacific case out of, I don't have the court that that case was decided on, but I believe it's cited in the brief, the District of Minnesota held that way in Smith-Bungee v. Wisconsin Central, the Western District of Virginia held that way in Cash v. Norfolk Southern, and finally the District of Oregon indicated that in Thomas v. Union Pacific. So these cases, if you're going to inject the requirement that an act actually violates federal law or regulation, Counsel for the Railroad is right. This is a heavily regulated industry. There are books and books and books governing the laws, rules, and regulations governing these. It ignores the practical realities of the workplace of assigning to railroad employees out in the field and vesting them with, well, if it turns out that you are wrong, even if you had an objective and subjective good-faith belief that you were right, which the jury found that Mr. Rooker did, you're not protected and the railroad can do whatever it wants. And the FRSA as a remedial statute shouldn't be interpreted that way. It has to be read as being protective of employees. And the district court came down on the side that, you know, while it was an exceedingly close decision after, I mean, seven days of testimony, expert testimony from both sides, legal argument from both sides, and an intelligent federal judge sitting and hearing it, he found it was a very close call. And I think in his order, which is at Excerpt of Record 23, he indicates that this is a twilight zone case. I'm talking about the legality of whether the error test was required by federal law. Is that what you're referring to? That that was close? Yes. And is that a question of law or fact? I asked opposing counsel. The district court thought it was a legal question based on this very old Eighth Circuit case. Well, that's a tangential question. I want to make sure I'm understanding your question. That's why there was the hesitation there. Are you asking, is it a... I was wondering if it should go to the jury. If the question of whether the error test was required by federal law or not should go to the jury, because it seems so highly factual. I think there are absolutely factual questions that that come into play, at least in theory. I don't know if that's necessarily a relevant question here. It's not relevant. As I put it at the beginning, I don't believe that an actual violation is necessary under the FRSA, and I think the case law supports that interpretation. Can you address opposing counsel's view of the district, the view that the district court erred at summary judgment in finding there wasn't a genuine issue of material fact and contributing factor? Yes. I want to begin that aspect of the argument by referencing Judge Thunheim, your question. This was not a situation where we solely relied on temporal proximity. There is a separate line of cases that talk about where if you cannot explain the adverse action, even viewing the evidence in the light most favorable to the railroad, if you can't explain the adverse action without some detective activity, that's a contributing factor. So they have, they cite this testimony, and there's a range of things they cite, but what caught my eye was Douglas Jones testifies that the error test was irrelevant to his decision that plaintiffs should be dismissed for serious rules violations. Now under normal principles of summary judgment, we would say the jury could credit that testimony. There's a genuine issue of material fact. It has to go to trial. Why wouldn't we do that here? Because I think that that testimony shouldn't be viewed in a vacuum. Well, we can't weigh evidence, of course. So we can't look at all of the facts and say who has the better case. We just have to see whether taking the facts in the light most favorable to BNSF, there's a genuine issue of material fact. But I don't, I would put that's not sufficient for the railroad to say no. There is still... Why not? We do that in summary judgment all the time. You have a declaration that that provides a, or an affidavit that says this was, this is my allegation, and it's detailed, and he's a decision maker. But the decision still was, at least in part, he says not at all. He says it was irrelevant. But what the decision was based on, and this is in the record, and I don't believe it's even contested in the record, is the railroad's allegation that Mr. Rueckert failed to work efficiently. You even heard it today, that he spent five hours without accomplishing any of their assigned tasks. You know, I would disagree with the factual basis for that. I understand that that's not, maybe not a summary judgment question. But when questioned about, well, what was the problem? What was the inefficiency? The only thing railroad witnesses, not plaintiff's witnesses, railroad management officials could identify was performance of the airbrake test. So they said that he spent five hours out on his shift and didn't accomplish any of his three tasks, and of the five hours, they say the air test took 20 minutes, and they say it's like saying we fired him because he took half an hour for lunch that was in their briefing. Yes.  don't agree with that analogy. What it would be is if the railroad had aggressively questioned them and said, well, why are you taking a lunch break? What are you doing? I'm not from around here, but we don't take lunch breaks from where I'm from. You know, after he had taken the lunch break, hauled Mr. Rueckert out of the room and said, tell me why you took this lunch break. When the facts are considered, even in the light most favorable to the railroad, it ceases to become possible to unwind the performance of the airbrake test from this this inefficiency, and it may be, I'm not conceding that under the hypothetical of, you know, a lunch break, that may also be sufficient. You know, I think what I interpret Judge Lassnick's order referring to the relaxed standard or lowered burden to mean that contributing factor is is not what anybody that deals with employment litigation is really used to. We're much more familiar with the McDonnell-Douglas or you know, substantial motivating factors, those lines. Contributing factor requires significantly less than that. Contributing factor is any factor, any factor. If this thing played any role whatsoever, if any part of the inefficiency was performance or was, when I say performance of the airbrake test, I'm expanding it to be performance of the airbrake test over the objection of the supervisors. Counsel, could I interject a question, please? I realize that under the theory of the appellant, they're seeking to get out of the trial verdict completely. They have a new trial, but assuming we went on your side of the case on some of those verdict issues, is there also an issue here on remediator? Or excessive damages that wasn't addressed in the argument? That wasn't, I'm sorry, I missed the very last part of your question. That was not addressed in the oral argument, but it was in the briefing, I thought. Yes, there are. What I'd like to do is hear the appellee's version of what the law is on that. And I think it's important to parse out, you know, there are several questions on remediator of damages, both on appeal and on cross-appeal. Turning first to the challenge of the back pay award, from which I, with the court's permission, I'm just going to check and verify. I I'm sorry, back pay was not challenged on appeal, but so turning to the emotional distress award, remediator is a very, very hybrid. And this, the jury, and I think the district court was aware of that. What was the amount the jury gave on emotional distress and punitives? I believe that the emotional distress was around 575 to 590,000. I don't remember the exact dollar amount as I stand here at the lectern. The impunitive damages, I believe it was approximately 200,000. And if I'm mistaken on either of those numbers, I apologize and in terms of the emotional distress section specifically, the jury heard evidence specifically from the plaintiff's wife, Mrs. Rueckert, about how devastating this effect was. That, you know, he came back when he received the letter that he had been terminated, he broke down and said, Stu Gordon just ended my career. And I think it's important to note that the district court recognized just how high of a burden the remediator is. The district court, I think, even says that from the bench he disagreed with some of the jury's verdicts, but that it wasn't sufficient to take that amount away from the jury. And I think that's key. You know, I was asked at the oral argument at the district court, you know, is there amount that would be too high? And I think there probably is, but this isn't it. This doesn't rise to the level of being so shocking to the conscience. Based on this record, the jury had its ability to make this finding and it did make this finding and that's why the district court did not disturb it. For the punitive damages, I think the same argument applies. I understand that the railroad challenges not only the amount of punitive damages, but the availability of punitive damages in this case. The jury instruction on that, on punitive damages, was fairly straightforward and to the point and is not challenged here on appeal. The fact that the railroad has some written policy in place, dated by the way, roughly a month or two after Mr. Rookert is fired, to say, well, therefore we can't have punitive damages against us. Jury verdicts are entitled to more deference than that. The railroad was free to argue that and did in fact argue that to the jury and the jury rejected that argument. I'm nearing the end of my time here, and I would be remiss if I didn't at least briefly address some of the issues that we raised on our cross-appeal unless the court has any specific questions about... Not seeing any, I'm going to turn... One question. Did you object to the district court's decision to treat the jury's verdict on front pay as advisory? What our objection was, Your Honor, was that we agreed that the railroad or that the question of is it going to be reinstatement or is it going to be front pay, that that was a determination for the district court. I don't think either party challenged that. We did maintain that after the jury returned its verdict, that that is the verdict amount, and it's subject again to the remitted or doctrine. And in terms, unlike emotional distress where it's more ethereal, front pay has economic testimony behind it where it can be linked. And here, I don't think there can be any at least credible argument that the district court has to require remitted or when it was less than half of what the economist testified to. Finally, with regard to what I at least refer to as the Blaney tax gross-up on income taxation, I think here part of the reason why I take this issue so seriously is what happened is exactly what I was concerned about happening and raised to the district court when we were taking exceptions to the jury instructions. The district court said, I'm not removing the tax gross-up from the case. You're free to argue it, but he never gave the jury any instruction on it. And he never gave the jury any, when I say any instruction, he never gave the jury an instruction when he was outlining the category of damages that were available. Didn't the jury come in with a higher amount than had been asked? And it was, I think the opposing counsel says it was 39.6% higher exactly what the experts had said at trial was the amount that would be needed for a tax gross-up. The counsel also stated that you can't explain any of these numbers by a tax gross-up at the post trial appeal. Or I'm not trying, not the post trial appeal, the post trial motions hearing. I see that I'm out of time. And so with that I would, as it relates to our other issues, I would rely on our brief. You should take the time to give your full answer to Judge Acuda. Okay. Thank you, Your Honor. The, the back pay award was higher than what the economists had testified to. That being said, the economist's report had been dated or had been based off of a September 2015 trial date, which was then vacated and trial didn't happen until almost exactly two years ago today. Furthermore, the jury heard evidence that the back pay award was entirely consistent with what Mr. Rueckert would have been making, specifically the testimony of Ron, I, I believe it's pronounced Creek, but it looks like Critch. That, based on his testimony and his earnings, where he's in a comparable spot to Mr. Rueckert on the seniority roster, that the back pay award is entirely supported for that basis. And that's also in our post trial briefing. We're opposing the railroad's request for a remitter on the front pay. Thank you. Thank you very much, Your Honor. We'll hear from Ms. Holmes again. Thank you, Your Honor. Just briefly, first on the summary judgment question, a couple of points. In the on-property hearing, the management, managers testified, and this is before any lawyers or anything else, repeatedly, that the break test was irrelevant to the overall slowdown. That what they objected to was how long it was taking the crew to do anything. I question the necessity of the test, but by all means, if you're going to do the test, take that time. If you take those facts in the light most favorable to BNSF, you cannot reach the conclusion that there's a contributing factor here as a matter of law. You likewise can't reach that conclusion under the supposed maxim that if you can't explain the adverse action without mentioning the protected activity, that somehow that that means that there's a violation as a matter of law. There are lots of cases, late injury report cases, for example, where the injury report is the protected activity and the rule of violation is reporting it late. You are mentioning the protected activity. That's the Davis case, the Burton case, the Blackerby case from the Eighth Circuit, which is at 849 F. 3rd 716. All of those cases hold the plaintiff gets a trial. Not that the plaintiff gets judgment as a matter of law. That's simply not the law. And I think if there's a new trial, it needs to be a new trial on all issues because as the Seventh Circuit noted in Kosiora under very similar facts, once the jury is instructed that contributing factor has been met as a matter of law, it can mislead them as to the application of the affirmative defense. So I think there has to be a new trial on all issues if you order a new trial, which we clearly think at a minimum you should do, both for that reason and of course because of the break test instruction. With regard to the A2 question, first of all, I think there's, whether an actual violation is required, I think Judge Ikuda, as you pointed out, I think there's no question that the court has discretion to decide that issue. Whether you do or not is clearly up to you, but there are many cases within this circuit, and I'll just give an example or two, where, look, the claim here was raised below. There's no question BNSF has taken the position throughout that this plaintiff did not satisfy the conditions of 201-109-A2. That's the claim, the underlying claim. He did not engage in protected activity. The legal theory may be new. But as this court held, for example, in Thompson v. Runnels, which is 705-F3-1089, citing the Supreme Court's decision in Cayman, once an issue or claim is properly before the court, the court is not limited to particular legal theories advanced by the parties. So again, I think you certainly can address it, and there's ample precedent within the circuit to do so. You have also done it with regard to changes in statutory interpretation. The most recent case that I found is Hooks v. Kitsap Tenant Support Services, which is at 818-F3-550. The pin site is 558 Footnote 8, and it had to do with a changed position on the application of the Federal Vacancies Reform Act. So again, you certainly have the ability to do it. A-4, I think, is different. Counsel is right that certain cases have found that A-4 requires a reasonable belief. But A-4 is different because you don't have the contrast to A-1 in the same way, because A-1 and A-2 deal with the same thing, violations of federal law, and you also don't have the problem of undermining the refusal to work provisions. So I think those two things do make it different. I will concede, and perhaps the one thing Mr. Bowman and I agree on is the statute is not a model of drafting clarity, but I think good faith adds to the requirements. It doesn't detract from. It doesn't dilute the requirements of the statute. It adds to them. And so for that reason, we would request that the court reverse and either enter judgment for BNSF or a new trial on all issues. Thank you very much for your attention. Many thanks. We appreciate it. At least, I think both counsel, even if they don't agree on the issues here, agree with the premise that advocates should give excellent arguments, and you've both done that, and we appreciate it. The case of Borghera v. BNSF, Railway Company, shall be submitted.
judges: Gould, Ikuta, Tunheim